IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 3:05cr00017-1 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| DEREK F. GAVEGNANO | ) | By: Norman K. Moon |
| | ) | United States District Judge |

Derek F. Gavegnano, proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging that the court failed to follow proper procedure under the Classified Information Procedures Act ("CIPA")[1], that the United States engaged in prosecutorial misconduct by improperly circumventing CIPA, and that counsel provided ineffective assistance in agreeing to circumvent CIPA and in failing to investigate and call

---

[1] CIPA establishes a comprehensive procedural framework for the discovery and admission of classified documents in a criminal prosecution. CIPA section 1(a) defines "[c]lassified information," in pertinent part, as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." United States v. Rosen, 557 F.3d 192, 195 (4th Cir. 2009). "Congress passed CIPA to prevent the problem of 'greymail,' where defendants pressed for the release of classified information to force the government to drop the prosecution." United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988); Senate Rep. 96-823, 96th Cong., 2d Sess. 1-4 (1980), reprinted in 1980 U.S. Code & Cong. News 4294-98. CIPA is "merely a procedural tool requiring a pretrial court ruling on the admissibility of classified information." United States v. Smith, 780 F.2d 1102, 1106 (4th Cir. 1985).

    CIPA section 4 governs the discovery of classified documents. Where a defendant is permitted to discover information under the Federal Rules of Criminal Procedure, CIPA permits the district court to authorize the government to redact information from classified documents, to substitute a summary of the information in the documents, or to substitute a statement admitting relevant facts. The United States, however, must make a written request for such limits on otherwise discoverable evidence, which the court reviews *ex parte*.

    CIPA section 5 requires that a defendant notify the government and the court in writing if he reasonably anticipates the disclosure of classified information in pretrial or trial proceedings. See United States v. Miller, 874 F.2d 1255, 1276 (9th Cir. 1989). Under CIPA section 6, following such notice, the government *may* request a mandatory hearing to determine "the use, relevance, or admissibility of classified information." If the district court authorizes the disclosure of classified information, the government *may* request to substitute a statement admitting relevant facts or a summary of the classified documents "in lieu of the disclosure of such specific classified information." CIPA § 6(c). Where this statement or summary provides the defendant with "substantially the same ability to make his defense," the district court "shall" accept the substitution. Id. However, if the district court determines that the substitution is inadequate, and the government files an affidavit objecting to the disclosure of the information, the court is empowered to dismiss the indictment or to take other appropriate action to minimize the prejudice to the defendant. Id. at § 6(e)(2).

corroborating or alibi witnesses. The United States has filed a motion for summary judgment[2] and Gavegnano has responded, making this matter ripe for disposition. For the reasons stated herein, the court grants the United States' motion for summary judgment.

## I. UNDERLYING FACTS OF THE CRIMINAL CASE

The Federal Bureau of Investigation ("FBI") in Charlottesville, Virginia, initiated an investigation of Gavegnano in August 2004 after receiving information from United States military authorities regarding the discovery of child pornography on Gavegnano's government-issued computer. Gavegnano was employed with the National Ground Intelligence Center[3] ("NGIC") based in Charlottesville, Virginia, and was deployed in Qatar as an Intelligence Analyst, working independently and with a top secret security clearance. Gavegnano worked as the Lead Analyst for the Path Finder Program[4], mining data and providing intelligence information to United States military ground troops.[5]

---

[2] The United States submits its motion as a motion to dismiss; however, because the Government submitted an affidavit along with its motion to dismiss, the court will construe the motion as a motion for summary judgment. See Fed. R. Civ. P. 12(d).

[3] The National Ground Intelligence Center is the Defense Department's primary producer of ground forces intelligence. The NGIC produces scientific and technical intelligence and military capabilities analysis on foreign ground forces required by warfighting commanders, the force modernization and research and development communities, Defense Department and national policymakers. United States Army Intelligence and Security Command, http://www.inscom.army.mil/msc/default ngic.aspx?text=off&size=12pt.

[4] The NGIC created the Pathfinder program, a software that provides analysts with automated tools and methods to process, analyze, and integrate information drawn from any U.S. Government, commercial, or public domain database. The Pathfinder software drastically reduces the time spent on projects (in many cases, from months to days or days to hours) by exploiting significantly larger amounts of information than was possible before. Users are able to sort, arrange, compare, retrieve, and visualize the contents of thousands of documents at a time. The program's UNIX-based environment provides multiuser, windowing, and graphics capabilities that allow simultaneous use of multiple tools. Its large disk space and high processing speed increase analyst efficiency. The Pathfinder software also provides administrative tools to manipulate, edit, delete, and share databases. This encourages analysts to work as a team, to share relevant data among team members, to rapidly assimilate new information, and to quickly identify data important to the analysis problem. Pathfinder, FAS Intelligence Resource Program, http://www.fas.org/irp/program/process/pathfinder.htm.

[5] At a pretrial hearing, Gavegnano's Division Chief, Timothy Hendrickson, testified that, while in Qatar, Gavegnano
> "was responsible for delivering an information technology software product [Pathfinder] to the intelligence organizations that were operating in theater at the time. [Pathfinder is a] software application that does data mining of lots of information. [Gavegnano] was responsible for delivering the equipment, installing and configuring the software, training operators how to use [the program], and also in harvesting data, digital data, to be data-based in the system."

2

On May 29, 2004, Gavegnano was observed by the lead Windows System Engineer using his government-issued computer inappropriately in an internet café on the military base in Qatar. The Windows System Engineer testified that after observing what appeared to be pornography on Gavegnano's computer and that the computer was inappropriately set up, the Windows System Engineer confronted Gavegnano and an argument ensued. The military police were called and Gavegnano's government-issued computer was seized. As the investigation continued, agents determined that Gavegnano's computer possessed over 30,000 images and videos containing pornography. Evidence revealed that Gavegnano's computer contained 1,042 pornographic images of children under the age of 18. Agents also discovered 37 videos on Gavegnano's computer which contained images of obscene material depicting sexual relations and acts between human adult females and animals.

At trial, Gavegnano admitted that the videos containing bestiality were his videos; however, he argued that the images containing child pornography appeared on his computer accidentally due to the data mining work he was performing for the government.[6] Gavegnano argued that he was authorized to search pornographic images for embedded messages from terrorist or other special interest groups, and that the child pornography inadvertently downloaded to his computer while he was performing the authorized work.

## II. PROCEDURAL BACKGROUND

On April 5, 2006, a grand jury in the Western District of Virginia filed a Superceding Indictment against Gavegnano, charging six counts of receiving child pornography, in violation of 18 U.S.C. §§ 3161(a) and 2252(a)(2) (Counts One through Six); one count of possessing child pornography, in violation of 18 U.S.C. § 2256(2) (Count Seven); and one count of importing or

---

Later at the same hearing, Hendrickson also testified that knowing Gavegnano's job description, it would not involve having images of child pornography or bestiality on his computer.

[6] At trial, Special Agent Duenas testified that Gavegnano stated that he was downloading pornographic images to work on problems that existed in the Pathfinder program.

3

transporting obscene matters, in violation of 18 U.S.C. §§ 3261(a) and 1462 (Count Eight). The grand jury later returned a Second Superseding Indictment, which added no new counts, but was filed for clarification purposes, including charging different images than in the Superseding Indictment.

Before trial, Gavegnano filed a motion to suppress and exclude evidence, including his government-issued computer and all statements he made to law enforcement after his computer was seized, on the basis that the evidence was unlawfully obtained. Gavegnano also filed a motion *in limine* offering notice of his intent to disclose classified information pursuant to CIPA, 18 U.S.C. Appx. 3 § 5(a). Gavegnano sought authorization to present evidence concerning his employment duties and the mission that he was assigned in Qatar because he believed that the evidence included information that was "classified" and/or that led directly to information that may have been designated as "top secret" or "classified." The court held a hearing on these matters and ultimately denied Gavegnano's motion to suppress and took Gavegnano's motion concerning CIPA under advisement. Gavegnano, through counsel, later withdrew his motion concerning CIPA based on an agreement with the government that permitted Gavegnano to present evidence and testimony concerning steganography[7] and any claimed authorization to download pornography.

On January 16, 2007, Gavegnano's two-day jury trial began in Charlottesville, Virginia. Before submitting the case to the jury, the United States moved to dismiss Count Five against Gavegnano, and the court granted the government's motion. Gavegnano moved for acquittal, and the court denied his motion. The jury returned a verdict finding Gavegnano guilty of Counts One, Two, Seven, and Eight and not guilty of Counts Three, Four, and Six.

---

[7] Steganography refers to the practice of hiding secret messages within images.

4

After trial, Gavegnano filed three motions to set aside the verdict and the court denied all three motions. On May 29, 2007, the court sentenced Gavegnano to a total term of 60 months incarceration. Gavegnano appealed and the United States Court of Appeals for the Fourth Circuit denied his appeal and petition for rehearing.

Gavegnano then filed his instant § 2255 motion alleging court error, prosecutorial misconduct, and two grounds of ineffective assistance of counsel. Gavegnano argues that he wished to submit evidence at trial which demonstrated that terrorist and other groups of interest were using steganography through pornographic images to transmit coded messages and that he had received an email authorizing him to pursue this line of investigation. Based on his desire to present this evidence, counsel filed a motion *in limine* to advise the court and the government that he intended to present potentially classified information. After filing the motion, the United States agreed to allow Gavegnano to present whatever evidence and testimony he wished concerning steganography and any claimed authorization to download pornography. Based on this agreement, counsel withdrew his motion. Gavegnano now asserts that the court erred in failing to follow the procedures set out under CIPA, that the government improperly circumvented CIPA by stipulating with counsel as stated above, and that counsel was ineffective in agreeing to the government's stipulations. Gavegnano claims that as a result of the court's, the prosecutor's, and counsel's failure to follow CIPA protocol, two witnesses, Timothy Hendrickson, Gavegnano's Division Chief, and June Pulliam, Gavegnano's direct supervisor, told Gavegnano privately that they were concerned about testifying in this matter due to lack of security precautions.[8] Gavegnano argues that without the proper security measures in place, these witnesses "may have withheld information from the defense or court for fear of disclosure of classified information." The court notes that Gavegnano provides no affidavits from either

---

[8] Hendrickson testified at Gavegnano's pretrial hearing. Pulliam testified at trial.

5

Mr. Hendrickson or Ms. Pulliam in support of his position or his allegations that they were concerned about testifying in this matter. Gavegnano also argues that if CIPA procedures had been followed, he would have been able to discover the email which authorized him to pursue his line of research that coded messages were embedded in adult pornography, which led to the "automated download and the accidental retrieval of" the child pornography images. The government submits that Special Agent Duenas of the FBI searched the NGIC files and documents and discovered numerous references to steganography at all levels of classification, but found no exculpatory evidence of any kind, including the email to which Gavegnano refers.

Gavegnano also alleges that counsel was ineffective in failing to call three witnesses, Timothy Hendrickson, Angelo Santos, and an unnamed Army Sergeant, that "could have and should have been called to the stand to refute" "a number of erroneous statements" made by the prosecution during opening and closing statements. Gavegnano argues that Mr. Hendrickson could have been called to testify: (1) to "further corroborate [Gavegnano's] claims of the use of steganography and the intelligence community's interest in it," (2) that terrorists' use of pornography to transmit messages also extends to child pornography, (3) that Gavegnano had authorization to use his government-issued laptop for both work and personal matters while on assignment in Qatar, and (4) that Gavegnano had authorization to pursue steganography in pornography.[9] Gavegnano alleges that Mr. Santos and an unnamed Army Sergeant could have been called to testify that they had used Gavegnano's computer while in Qatar.[10]

---

[9] The court notes that at Gavegnano's pretrial hearing, Hendrickson testified that the "NGIC does not specifically have the mission to analyze [steganography]." Hendrickson further testified that the first time he heard anything about steganography as it related to Gavegnano was after Gavegnano's government computer was seized in connection with the investigation of this case.

[10] The court notes that Gavegnano states that it is his opinion that it "probably was not [Angelo Santos or the unnamed Army Sergeant who downloaded the child pornography, but] they were potential alibi witnesses and there was always some doubt as to who was in possession of the computer during the time of these downloads." The court also notes that Gavegnano testified that Mr. Santos and the unnamed Army Sergeant used his computer on occasion. However, during the investigation, Gavegnano told officials that no one else had access to his computer.

6

## III. COURT ERROR AND PROSECUTORIAL MISCONDUCT CLAIMS

Gavegnano alleges that the court failed to follow proper procedures under CIPA and that the United States engaged in prosecutorial misconduct by circumventing CIPA. However, Gavegnano failed to raise either of these claims on direct appeal and has failed to demonstrate grounds to excuse his default. Accordingly, the court finds that Gavegnano's claims of court error and prosecutorial misconduct are procedurally barred.

"[H]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). Claims that could have been, but were not raised on direct appeal are procedurally defaulted unless the petitioner demonstrates both cause for the default and actual prejudice from the failure to review the claim, Bousely, 523 U.S. at 622; United States v. Frady, 456 U.S. 152, 170 (1972); Wainwright v. Sykes, 433 U.S. 72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994), or demonstrates that he is actually innocent, Schlup v. Delo, 513 U.S. 298, 321 (1995); Mikalajunas, 186 F.3d at 493.

To establish cause, Gavegnano must point to some objective factor beyond the defendant's control that impeded or prevented him from presenting his claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). Objective factors that may constitute "cause" include: (1) interference by officials that makes compliance impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel. Wright v. Angelone, 151 F.3d 151, 160 n.5 (4th Cir. 1998) (quoting McCleskey v. Zant, 49 U.S. 467, 493-94 (1991)). To show prejudice, Gavegnano must demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 892 (4th Cir.

7

2000) (quoting United States v. Frady, 456 U.S. 152, 170 (1972)). Actual innocence means factual innocence, not merely the legal insufficiency of his conviction or sentence. Bousley, 523 U.S. at 623-24. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted).

Because Gavegnano did not raise his court error and prosecutorial misconduct claims on direct appeal, these claims are procedurally defaulted unless he demonstrates cause and prejudice or actual innocence. Gavegnano alleges that he failed to raise these claims on direct appeal as a result of counsel's ineffective assistance. Gavegnano argues that because counsel represented him both at trial and on his direct appeal, counsel did not see his own errors and, thus, did not raise them on appeal.

When using ineffective assistance of counsel to excuse procedural default of another independent claim, counsel must have been so wholly deficient as to violate petitioner's Sixth Amendment right. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Petitioner must show that by failing to challenge these issues, counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668 (1984). The Supreme Court explained that while ineffective assistance of counsel may establish cause for a procedural default, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 286 (1986). In this case, the court finds that Gavegnano's blanket conclusory assertion that that his claims concerning court error and prosecutorial misconduct were not raised

8

on appeal because of ineffective assistance of counsel falls short of establishing cause for his procedural default.

Moreover, even if Gavegnano could show cause to excuse his procedural default, he has not established any prejudice. Gavegnano alleges that if CIPA protocol had been followed, two witnesses may have testified to additional information that they "may" have been hesitant to testify to otherwise because of a lack of security precautions. However, neither of these witnesses ever indicated any hesitance to the court and both witnesses testified extensively in this matter, Hendrickson at the pretrial hearing and Pulliam at trial. Moreover, Gavegnano does not provide any affidavit from either of the witnesses or any other evidence in support of his instant allegation. Accordingly, the court finds that Gavegnano's allegation in this regard is purely speculative and insufficient to satisfy the prejudice requirement. Gavegnano also claims that had CIPA protocol been followed, he would have discovered an email which authorized him to pursue the use of steganography in adult pornography. However, the government submits that no such email was discovered in reviewing NGIC files and documents.[11] Further, even if the email did exist, it would have only indicated that Gavegnano was permitted to search adult pornography for secret messages. Gavegnano does not allege that he was authorized to search child pornography. Finally, Gavegnano has not established that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt and nothing in the record supports a finding that Gavegnano is actually innocent of his convictions. Accordingly, the court finds that Gavegnano procedurally defaulted these claims and that he has failed to establish grounds to excuse his default. Therefore, the court grants the government's motion for summary judgment as to these claims.

---

[11] Any claim that the government engaged in prosecutorial misconduct in failing to turn over exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), would fail. Gavegnano failed to raise any Brady claim on direct appeal and, therefore, any such claim is procedurally defaulted in his habeas proceeding. Inasmuch as Gavegnano has not demonstrated any grounds to excuse his default, any Brady claim he may raise would fail.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Gavegnano raises two claims of ineffective assistance of counsel. However, the court finds that none of Gavegnano's claims meet both the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668, 669 (1984), and, therefore, the court grants the government's motion for summary judgment.

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669; see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290 (citing Strickland, 466 U.S. at 697). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Strickland, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.

10

(internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields, 956 F.2d at 1297-99; Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In this case, Gavegnano has not demonstrated ineffective assistance of counsel.

### A. Agreeing to "circumvent" CIPA

Gavegnano alleges that counsel was ineffective in agreeing to "circumvent" CIPA by entering an agreement with the United States and withdrawing his notice of intent to disclose classified information. The court finds that Gavegnano has failed to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged deficient performance. Accordingly, the court grant's the United States' motion for summary judgment.

Gavegnano's trial counsel submitted an affidavit responding to Gavegnano's allegations of ineffective assistance. In his affidavit, counsel states that he entered an agreement with the United States which allowed Gavegnano to testify about information related to classified documents related to steganography. The government did not dispute that there was legitimate information and documents related to steganography and that steganography was related to terrorism. Counsel states that the prosecutor in this case agreed to stipulate at trial that there were thousands of documents, both classified and unclassified, that related to steganography and which related steganography to terrorism. Counsel attests that for "strategic reasons" he believed it would be "highly effective to have Gavegnano's uncontested testimony about the classified information he had seen related to this topic admitted without objection" and that the testimony would be sufficient to cast reasonable doubt on the related counts. Second, counsel states that he sought to avoid further delays that would have resulted from pursuing CIPA procedures, since the government had used the previous delay to add an additional charge and to present additional prejudicial evidence against Gavegnano. Third, defense counsel attests that he concluded that the classified documents would be of little value because the evidence of child pornography

11

found on Gavegnano's computer suggested that he had accessed the illegal images prior to deploying to Qatar, which effectively undercut Gavegnano's defense that the images were on his computer as a result of research he was doing while in Qatar. Based on the record, the court finds that Gavegnano has not demonstrated that counsel's performance was deficient. Moreover, the court finds that Gavegnano has not established that but for counsel's decision to enter the agreement with the United States and withdraw the notice, the outcome of Gavegnano's trial would have been different. Gavegnano alleges that had CIPA protocol been followed, witnesses Timothy Hendrickson and Jane Pulliam would not have been reluctant to testify and that he would have discovered an email authorizing Gavegnano to study steganography within pornographic images. There is no evidence, other than Gavegnano's bare assertions, to support his claim that Hendrickson and Pulliam were reluctant to testify. Further, Gavegnano did call witnesses to support his claim that his pornography research was within his job description, and the government called its own witnesses to counter any assertion that Gavegnano's work permitted downloading child pornography. The jury was able to evaluate the credibility of each witness and reached its conclusion. Gavegnano has not demonstrated that additional testimony by Hendrickson or Pulliam or admission of the email as evidence would have changed the outcome of his trial and, therefore, he has not demonstrated any prejudice as a result of counsel's alleged error. Accordingly, the court grants the United States' motion for summary judgment.

### B. Failing to investigate and call corroborating or alibi witnesses

Gavegnano alleges that counsel was ineffective in failing to investigate and call corroborating or alibi witnesses. Specifically, Gavegnano argues that counsel should have called Timothy Hendrickson, Angelo Santos, and an unnamed Army Sergeant. The court finds that Gavegnano has failed to establish that counsel's performance was deficient or that he was

12

prejudiced by counsel's alleged deficient performance. Accordingly, the court grants the United States' motion for summary judgment.

The court "must indulge a strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. (internal quotation marks omitted). The difficulty of overcoming that general presumption is even greater in this case, given that "the decision whether to call a defense witness is a strategic decision" that must be afforded "enormous deference." United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994) (internal quotation marks omitted). See also Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003). A defense attorney's decision not to call a witness is a "virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005). Furthermore, the Fourth Circuit has held that conclusory allegations concerning what exculpatory testimony would have been presented "are insufficient to establish the requisite prejudice under Strickland." United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004).

Gavegnano argues that counsel should have called Mr. Hendrickson to testify: (1) to "further corroborate [Gavegnano's] claims of the use of steganography and the intelligence community's interest in it," (2) that terrorists' use of pornography to transmit messages also extends to child pornography, (3) that Gavegnano had authorization to use his government-issued laptop for both work and personal matters while on assignment in Qatar, and (4) that Gavegnano had authorization to pursue steganography in pornography. However, at a pretrial hearing, Hendrickson testified that he did not authorize Gavegnano to conduct research on steganography and that he was unaware of Gavegnano's alleged efforts until he returned to NGIC. Defense counsel attests that Hendrickson's testimony at the pretrial hearing and other pretrial interviews caused him to have concerns about calling Hendrickson as a follow-up witness. Based on his concerns over Hendrickson's prior testimony and feelings toward

13

Gavegnano, counsel states that he decided not to call Hendrickson as a rebuttal witness for strategic reasons.

Gavegnano also alleges that counsel could have called Mr. Santos and an unnamed Army Sergeant to testify that they had used Gavegnano's computer while in Qatar, in order to corroborate Gavegnano's testimony of the same. Defense counsel attests that he made a strategic decision not to call these witnesses because Gavegnano had given at least one statement that only he had access to his computer, defense counsel decided "not to open that issue up any more by calling witnesses to say otherwise."

Based on the record, the court finds that Gavegnano has failed to establish the counsel's performance was deficient in failing to investigate or call Hendrickson, Santos, or the unnamed Army Sergeeant as witnesses at trial. Moreover, the court finds that Gavegnano has failed to establish that but for counsel's failure to investigate or call these witnesses at trial, the outcome of the trial would have been different. Accordingly, the court grants the United States' motion for summary judgment.

## V.

For the reasons stated, the court grants the United States' motion for summary judgment and dismisses Gavegnano's § 2255 motion.

**ENTER**: This 21st day of May, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE